ACCEPTED
01-14-00106-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/16/2015 9:22:48 AM
CHRISTOPHER PRINE
CLERK

# NO. 01-14-00106-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/2015 9:22:48 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE FIRST COURT OF APPEALS
## HOUSTON, TEXAS

### HENRY L. MAHER
*Appellant,*

### v.

### CYNTHIA JUNE MAHER
*Appellee*

**On Appeal from the 433rd District Court, Dallas County**
**Trial Court No. C2011-0263D**
**Honorable Charles A. Stephens II, Presiding Judge**

## APPELLEE'S BRIEF

Respectfully submitted by,

**GEORGANNA L. SIMPSON**
SBN 18400965
**GEORGANNA L. SIMPSON, P.C.**
1349 Empire Central
Woodview Tower, Ste. 600
Dallas, Texas 75247
Phone: 214-905-3739 • Fax: 214-905-3799

**ATTORNEY FOR APPELLEE**
**CYNTHIA JUNE MAHER**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant,** *pro se***:**        **Henry L. Maher**
*Respondent at trial*
1028 East Ave. N.
Onalaska, WI 54650
(608) 769-4779
henrylmaher@gmail.com

**Represented in the**        **Stacy Goodbread**
**Trial Court by:**        **Law Office of Stacy Goodbread**
893 S.Castell Ave.
New Braunfels, TX 78130

**Appellee:**        **Cynthia June Maher**
*Respondent at trial*

**Represented in the**        **Georganna L. Simpson**
**Appellate Court by:**        **GEORGANNA L. SIMPSON, P.C.**
1349 Empire Central Drive
Woodview Tower, Ste. 600
Dallas, Texas 75247
Phone: 214-905-3739 • Fax: 214-905-3799
Email: georganna@glsimpsonpc.com

**Represented in the**        **James Bettersworth**
**Trial Court by:**        **The Bettersworth Law Firm**
110 West Faust Street
New Braunfels, TX 78130

TABLE OF CONTENTS

*Identity of Parties and Counsel* ..........................................................................*i*

*Index of Authorities* ....................................................................................*vi*

*Abbreviations and Record References* ...................................................*x*

*Statement of the Case*..............................................................................*xi*

APPELLEE'S BRIEF

I.    OBJECTIONS TO AND MOTION TO STRIKE APPELLANT'S
      SUPPLEMENTAL APPENDICES AND ANY REFERENCE TO THOSE
      SUPPLEMENTAL APPENDICES IN APPELLANT'S BRIEF ..................................1

II.   STATEMENT OF FACTS ....................................................................3

III.  SUMMARY OF THE ARGUMENT ....................................................9

IV.   ARGUMENT ...................................................................................10

      A.    GENERAL OBJECTIONS TO APPELLANT'S BRIEF ...............................10

      B.    RESPONSE TO ISSUE ONE AND ISSUE THREE PART A ........................12

            The trial court has not mischaracterized the assets of the
            marital estate.

            1.    H.L. has waived his complaints regarding characteri-
                  zation of the marital estate.......................................................13

            2.    The trial court has not mischaracterized the Parties'
                  marital assets ..........................................................................14

**C.**     **RESPONSE TO ISSUE TWO** ....................................................................18

The trial court did not err in valuing the Parties' 3 Properties.

**1.**     H.L. waived his complaint regarding the trial court's reliance on the third appraisal to value the 3 Properties ......................................................................................18

**2.**     The trial court did not err in using the third appraisal to value the 3 Properties ..........................................................19

**D.**     **RESPONSE TO ISSUE THREE PARTS B–D**...........................................21

The trial court did not err in awarding Cindy an equitable reimbursement award against the community and a monetary judgment against H.L.

**1.**     H.L. failed to present an issue regarding his challenge to the trial court's award of reimbursement .......................21

**2.**     The evidence supports the trial court's reimbursement award and monetary judgment.................................22

    **a.**     The evidence supported a finding that Cindy was entitled to at least $813,988.77 in reimbursable claims ..................................................................22

    **b.**     H.L. failed to meet his burden to prove he was entitled to any offsets to the reimbursement claim ..................................................................................23

    **c.**     Cindy provided sufficient evidence to prove the enhancement value of the 3 Properties ......................24

    **d.**     Conclusion ..................................................................25

E.     **RESPONSE TO ISSUE FOUR**..................................................26

       **The trial court did not err in dividing the marital estate.**

       1.     **H.L. failed to present a reviewable issue as to fault** ............26

       2.     **The trial court did not err in granting the divorce on the ground of insupportability**.................................................27

       3.     **The trial court did not err in not finding that Cindy had forged a check from her father** .......................................28

       4.     **The trial court did not err in its just and right division of the marital estate** ..............................................................28

F.     **RESPONSE TO ISSUE FIVE** ....................................................29

       **The trial court committed no procedural errors that denied H.L. due process of law.**

       1.     **The trial court did not err when it did not enter the final decree within six months** ...............................................30

       2.     **H.L. waived his complaint that the trial court erred in allowing his attorney to withdrawal over his objection** ......31

       3.     **H.L. waived his complaint that the trial court erred in entering the final decree over H.L.'s objection**....................32

       4.     **H.L. was not harmed by the trial court's untimely filing of the findings of fact and conclusions of law** ................32

       5.     **The trial court did not err in signing Cindy's proposed Findings**........................................................................34

       6.     **H.L. waived his complaint that failed to timely forward its findings of fact and conclusions of law to him** ......34

       7.     **H.L. was not entitled to a hearing on his motion for new trial** ........................................................................35

**8.    Conclusion**.................................................................................36

**Prayer**.................................................................................................36

**Certificate of Counsel Regarding Word Count** ....................................37

**Certificate of Service**.........................................................................37

# INDEX OF AUTHORITIES

### *Case Law:*

**1.** ***Baker v. Baker***..................................................................................27
_ S.W.3d _, No. 14–14–00083–CV, 2015 WL 3917922
(Tex. App.—Houston [1st Dist.], no pet h.)

**2.** ***Barras v. Barras*** ................................................................................24
396 S.W.3d 154 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)

**3.** ***Bolling v. Famers Branch Independent School Dist.*** ........................*Passim*
315 S.W.3d 893 (Tex. App.—Dallas 2010, no pet.)

**4.** ***Cantu v. Horany*** ..................................................................................2
195 S.W.3d 867 (Tex. App.—Dallas 2006, no pet.)

**5.** ***City of Keller v. Wilson*** .......................................................................28
168 S.W.3d 802 (Tex. 2005)

**6.** ***Clay v. Clay*** .......................................................................................27
550 S.W.2d 730 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ)

**7.** ***Clements v. Corbin*** .............................................................................17
891 S.W.2d 276
(Tex. App.—Corpus Christi 1994, writ denied)

**8.** ***Dow Chemical Co. v. Francis***................................................................28
46 S.W.3d 237 (Tex. 2001)

**9.** ***Dutton v. Dutton*** ................................................................................16
18 S.W.3d 849 (Tex. App.—Eastland 2000, pet. denied)

**10.** ***In re E.A.C.*** ......................................................................................33
162 S.W.3d 438 (Tex. App.—Dallas 2005, no pet.)

**11.** *Fox v. Wordy* ..................................................................................2, 3
234 S.W.3d 30 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.)

**12.** *Ganesan v. Vallabhaneni* ................................................................14, 15, 16
96 S.W.3d 345 (Tex. App.—Austin 2002, no pet.)

**13.** *Garza v. Garza* ..................................................................................17
217 S.W.3d 538 (Tex. App.—San Antonio 2006, no pet.)

**14.** *Harmon v. Harmon* ..........................................................................35, 36
879 S.W.2d 213 (Tex. App.—Houston [14th Dist.] 1994, writ denied)

**15.** *Holden v. Holden* .............................................................................20
456 S.W.3d 642 (Tex. App.—Tyler 2015, no pet.)

**16.** *In re K.E.* .........................................................................................20
No. 07-13-00082-CV, 2013 WL 4733999
(Tex. App.—Amarillo 2013, no pet.)(mem. op.)

**17.** *Jones v. Morales* ..............................................................................30, 31
318 S.W.3d 419 (Tex. App.—Amarillo 2010, pet. denied)

**18.** *Lisk v. Lisk* .......................................................................................27
No. 01-04-00105-CV, 2005 WL 1704768
(Tex. App.—Houston [1st Dist.] 2005, no pet.)
(mem op.)

**19.** *Lopez v. Lopez* ..................................................................................20
55 S.W.3d 194 (Tex. App.—Corpus Christi 2001, no pet.)

**20.** *Mendoza v.*
*Fidelity & Guaranty Ins. Underwriters, Inc.* .............................................16, 17
606 S.W.2d 692 (Tex. 1980)

**21.** *McElwee v. McElwee* .........................................................................14, 15
911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1993, writ denied)

**22.** *McLemore v. McLemore* ....................................................................16
641 S.W.2d 395 (Tex.App.—Tyler 1982, no writ)

**23.**   *Monroe v. Monroe* ..............................................................17, 18, 29
   358 S.W.3d 711 (Tex. App.—San Antonio 2011, pet. denied)

**24.**   *Moore v. Jet Stream Invs.* ..............................................................20
   315 S.W.3d 195 (Tex. App.—Texarkana 2010, pet. denied)

**25.**   *Nelson v. Nelson* .............................................................................25
   193 S.W.3d 624 (Tex. App.—Eastland 2006, no pet.)

**26.**   *Nguyen v. Intertex, Inc.* ...................................................................3
   93 S.W.3d 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.)

**27.**   *Osorno v. Osorno* .................................................................14, 15, 16
   76 S.W.3d 509 (Tex. App.—Houston [14th Dist.] 2002, no pet.)

**28.**   *Robles v. Robles* ...........................................................14, 15, 16, 33
   965 S.W.2d 605 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)

**29.**   *Roosth v. Roosth* ..............................................................................16
   889 S.W.2d 445 (Tex. App.—Houston [14th Dist.] 1994, writ den'd)

**30.**   *Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank* .........................................................................35
   703 S.W.2d 356 (Tex. App.—Dallas 1985, no writ)

**31.**   *Siefkas v. Siefkas* ..............................................................................2
   902 S.W.2d 72 (Tex. App.—El Paso 1995, no writ)

**32.**   *Sink v. Sink* .....................................................................................14
   364 S.W.3d 340 (Tex. App.—Dallas 2012, no pet.)

**33.**   *Warriner v. Warriner* .........................................................................1
   394 S.W.3d 240 (Tex. App.—El Paso 2012, no pet.)

**34.**   *WorldPeace v. Commission for Lawyer Discipline* ........................................2
   183 S.W.3d 451 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)

## *Constitutions:*

**1.**   **Tex. Const., art I, § 19** .................................................................29

*Statutes:*

1.  **Tex. Fam. Code § 3.402** ...............................................................22, 24

2.  **Tex. Fam. Code § 3.409** ...................................................................22

3.  **Tex. Fam. Code § 7.007** ...................................................................24

4.  **Tex. Gov't Code § 74.024** ................................................................30

*Rules:*

1.  **Tex. R. App. P. 33.1** ...........................................................19, 23, 32

2.  **Tex. R. App. P. 34.1** ...........................................................................2

3.  **Tex. R. App. P. 38.1** ................................................................*Passim*

4.  **Tex. R. App. P. 44.1** .........................................................31, 32, 34, 35

5.  **Tex. R. Civ. P. 270** ............................................................................20

6.  **Tex. R. Civ. P. 297** ......................................................................32, 34

7.  **Tex. R. Civ. P. 299** ............................................................................34

8.  **Tex. R. Civ. P. 299a** ...........................................................................34

9.  **Tex. R. Civ. P. 320** ............................................................................35

10. **Tex. R. Civ. P. 329b** ...........................................................................35

11. **Tex. R. Judicial Admin. 6.1 reprinted in Tex. Gov't Code, tit. 2, subtit. F, app.**......................................................................30, 31

*Abbreviations***:**

1.      Appellant Henry L. Maher shall be referred to as **"H.L."**

2.      Appellee Cynthia June Maher shall be referred to as **"Cindy."**

3.      H.L. and Cindy shall be referred to jointly as the **"Parties."**

*Record References:*

1.      The Clerk's Record delivered on August 28, 2014 and Supplemental Clerk's Record delivered on October 30, 2014 will be referred to as "CR" and "SCR," respectively, and will be cited by volume and page number(s), where applicable. **__CR:__**; **SCR:__.**
        Notes:
        - 2CR continues its page numbering from 1CR and begins on page 86.
        - The Clerk's Record delivered on March 18, 2014 will not be cited.

2.      The Reporter's Records will be referred to as "RR" and will be cited by volume and page number(s), where applicable. **__RR___.**

3.      Cindy's and H.L.'s exhibits will be cited as "PEx" and "REx" and will be cited by volume, page number, and exhibit number, where applicable. **3RR__:PEx.__**; **3RR__:REx.__.**

4.      Appellant's Brief will be referred to as "A/ant's Br" and will be cited by page number(s) where applicable. **A/ant's Br:__.**

5.      Appellant's Supplemental Appendices will be referred to as "A/ant's Supp. App." and will be cited by section(s) and page number(s), where applicable. **A/ant's Supp. App.(_):_.**

STATEMENT OF THE CASE

*Nature of the Case:*    This case involves a divorce with a just and right division of property, community property, separate property, and a reimbursement claim.

*Proceedings in*    **On September 17, 2012,** the trial court held a one-day
*Trial Court:*    bench trial to address the issues of separate property and reimbursement claims. 2RR.

*Trial Court Disposition:*  **On September 23, 2013,** the trial court signed a final decree dividing the marital estate and awarding Cindy a money judgment to compensate her for $813,988.71 of her reimbursement claim as part of its just and right division. 2CR:5–32.

# APPELLEE'S BRIEF

**TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:**

Appellee, Cynthia June Maher ("Cindy"), submits her brief in response to Appellant Henry L. Maher's ("H.L.") Brief.

## I.
### OBJECTIONS TO AND MOTION TO
### STRIKE APPELLANT'S SUPPLEMENTAL APPENDICES AND
### ANY REFERENCE TO THOSE SUPPLEMENTAL APPENDICES IN APPELLANT'S BRIEF

Before addressing the merits of the issues raised by H.L. in his Appellant's Brief, Cindy specifically objects to H.L.'s supplemental appendices A–G, as those documents are not part of the formal appellate record, and any reference to and reliance upon those documents in his brief. To justify his inclusion of and citation to documents that are outside of the formal appellate record, H.L. relies solely upon Texas Rule of Appellate Procedure 38.1(k)(2), which sets forth the optional contents of an appendix in a civil appeal. A/ant's Supp. App.:96–97; Tex. R. App. P. 38.1(k)(2). H.L. misplaces his reliance.

It is well established that documents attached to an appellate brief, which are not part of the formal appellate record, may not be considered by the appellate court. *See Warriner v. Warriner*, 394 S.W.3d 240, 254 (Tex. App.—El Paso 2012, no pet.)(holding that documents attached to a brief as an exhibit or an appendix, but not

appearing in the record, cannot be considered on appellate review); *Fox v. Wordy,* 234 S.W.3d 30, 33 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.)(refusing to consider appellant's affidavit attached to brief because it was not part of the appellate record); *Cantu v. Horany*, 195 S.W.3d 867, 870 (Tex. App.—Dallas 2006, no pet.)(granting appellee's motion to strike portions of appellant's brief referring to documents outside record); *WorldPeace v. Commission for Lawyer Discipline*, 183 S.W.3d 451, 465 n. 23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)("we cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed"); *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex. App.—El Paso 1995, no writ)(holding that appellate court may not consider matters outside appellate record). The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record. Tex. R. App. P. 34.1.

H.L.'s Appellant's Brief's supplemental appendices include the following, which are not included in the formal record on appeal:

- Tables A–C, and E, which rely in part on Cindy's trial exhibits, but to which H.L. has added notes, comments, and modifications to include material that was not before the trial court. A/ant's Supp. Apps.(A–C, E). For example, without explanation, H.L. changed the designation of certain accounts included in Cindy's tracing spreadsheets. *Compare* A/ant's App.(A):102 to 3RR:88:PEx.6;

- A memorandum ruling that the trial court stated would not be filed with the court records.[1] A/ant's App.(D):126-27;

- Excerpts of bank statements and correspondence from the Internal Revenue Service that were not introduced as evidence at trial. A/ant's App.(A):110; A/ant's App.(F):130-40; and

- A letter from H.L. to the Court Reporter. A/ant's App.(G):142.

Attaching documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal, and therefore, the documents outside the formal appellate record cannot be considered. *Fox,* 234 S.W.3d at 33; *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Accordingly, Cindy requests this Court not to consider the documents attached to H.L.'s brief as supplemental appendices A–G, which are not a part of the formal appellate record in this case, as well as references to those documents in his brief in support of his arguments.

## II.
### STATEMENT OF FACTS

A. **On July 7, 1984,** the Parties married in Dallas County. 1CR:8; 2RR:7, 9. The Parties had one Child of the marriage, who was over eighteen-years old at the time of the final trial. 2RR:8.

---

[1] H.L. has not objected to the trial court's direction that this memorandum ruling not be filed with the court records. *See generally*, 1–2CR, SCR, 1–3RR, A/ant's Br.

**B.**     **In 1988,** Cindy became a licensed CPA, after completing a master's program, and began working with an accounting firm, PricewaterhouseCoopers (f/k/a Coopers & Lybrand). 2RR10–11.

**C.**     **In 1995,** the family moved to Columbus, Ohio because H.L. wanted to start his own construction company in that area. 2RR:12–13. Cindy's parents lent Cindy and H.L. $25,000 to help H.L. create Triad, a partnership. 2RR:12, 22.

**D.**     **In 1995,** the Parties had a negative net worth as a result of their debts. 2RR:47, 59. **In 1995 and 1996,** Cindy's parents gifted money to her annually. 2RR:14–15. **Beginning in 1997,** Cindy's parents gave annual gifts to Cindy, H.L., and their Child. 2RR:14–19. Gifts to H.L. were deposited into the Parties' joint account, gifts to Cindy were deposited into her separate account, and gifts to the Child were put into an account—and later a trust—created for his benefit. 2RR:18–21.

**E.**     **In 2001,** Cindy's mother passed away, and her mother's estate was distributed through a bypass trust to Cindy and her brother and sister. 2RR:13.

**F.**     **Between 2003 and 2004,** Triad winded down and closed. 2RR:22, 149.

**G.**     **In 2004,** Cindy moved to Texas to be near her family, while H.L. finished closing Triad CM. 2RR:23, 149. At that time, neither Cindy nor H.L. were employed. 2RR:23.

**H.**   **In 2005,** H.L. moved to Texas. 2RR:149. **After closing Triad,** H.L. worked only briefly for a concrete company but was otherwise unemployed from the time the partnership ended until the Parties separated in 2010. 2RR:24–25. **After moving to Texas and until May 2010,** Cindy worked only sporadically for minimal income. 2RR:25.

**I.**   **On February 10, 2006,** Cindy's father conveyed 5.167 acres (the "5-Acre Plot") to Cindy and H.L. 2RR:28–29; 3RR:46–47:PEx.1.

**J.**   **During 2006,** the Parties began constructing a home on the 5-Acre Plot. 2RR:32–33, 149. Although the parties had budgeted to spend $800,000 on the construction, as a result of H.L.'s mismanagement, the Parties actually spent about $1.5 million on the home. 2RR:41–42, 105–06; 2CR:43–44. The monies for the construction came from community funds and the Parties' separate funds. 2RR:110–11; 3RR:188:PEx.11. **In 2008,** the home was "finished" such that the Parties could move into it and live there. 3RR:36–37.

**K.**   **During this same period,** the Parties purchased 22 acres adjacent to the 5-Acre Plot using both community funds and Cindy's separate funds. 3RR:37–38. The Parties then sold 12.15 acres of that property to a developer that was developing 106 acres adjacent to the 22 acres. 3RR39. The Parties retained an 8.85-acre track and a separate one-acre landscape buffer with a covenant against future development to create space between the Parties' property and the new devel-

opment. 2RR:39–40, 54–55; 3RR:54:PEx.3. Thus, combined, the Parties owned approximately 15 acres (the "3 Properties").[2] 2RR:40.

**L.** **In 2010,** the Parties separated, and H.L. moved to Michigan. 2RR:42. Cindy remained in Texas with their Child, and Cindy took care of paying all the Parties' bills, including improvements to the marital residence, taxes, medical bills, insurance, and telephone bills, with funds from the Parties' IRAs, her sporadic income, and additional distributions from her mother's estate. 2RR:43–46.

**M.** **After the Parties separated,** Cindy traced the Parties expenditures from 1995 to the present date in a 76-page binder (the "Tracing Spreadsheets") applying the Community-Out-First rule. 2RR:41–42, 55–61; 3RR:87–162:PEx.6. The Tracing Spreadsheets were divided into six sections, the first of which was a summary of the other five sections. 2RR:56; 3RR:89–118:PEx.6.1. With these Tracing Spreadsheets, Cindy traced the Parties' finances from 1995, when they were broke, through the date the Parties' separated. 2RR:59; 3RR:87–162:PEx.6. The Tracing Spreadsheets included all of the Parties' profits and losses throughout that time period. 2RR:59; 3RR:87–162:PEx.6. According to the Tracing Spreadsheets, **on May 30, 2007,** the entire community estate was fully depleted, after which time, Cindy deducted one-half of each subsequent expense from each Party's separate funds. 2RR:60–61, 76; 3RR:90–

---

[2] During the trial, the disputed land was referred to as 13.5 acres.

118:PEx.6.1. The Tracing Spreadsheets also showed that **on August 6, 2007,** H.L.'s separate property was fully depleted, so from that point on, Cindy's separate property was used to pay all of the Parties' expenses.[3] 2RR:61; 3RR:90–118:PEx.6.1.

N.     **Approximately a year before trial,** Cindy provided H.L.'s attorney with the Tracing Spreadsheets and the underlying documents that supported her calculations. 2RR:72, 166–68.

O.     **On March 7, 2011,** Cindy filed for divorce. 1CR:8–16; 2RR:47.

P.     **On September 17, 2012,** the trial court held a hearing to address separate property and reimbursement claims. 2RR. Both Parties entered expert appraisals of the 3 Properties, as well as estimated values of certain personal property, including vehicles, valuables, furniture, and artwork. 2RR:47–48, 73–75, 122–41; 3RR:62–85, 170–71:PEx.5, 8; 3RR:10–44:REx.3–5. Additionally, Cindy entered Comal County tax records and value histories for the 3 Properties. 2RR:48–52; 3RR:47–60:PEx.2–4.

Q.     **During the final hearing,** Cindy introduced the Tracing Spreadsheets as a summary of her tracing. 2RR:55–56; 3RR:87–162:PEx.6. Cindy additionally introduced a summary of her reimbursement claim, which was based on the Trac-

---

[3] H.L.'s separate estate of $68,000.00, which he did not dispute, was comprised entirely of gifts from Cindy's parents. 3RR:120:PEx(6.2); *see generally*, 1–2CR, SCR, 1–3RR.

ing Spreadsheets. 2RR:68–71; 3RR:164–68:PEx.7. The trial court overruled H.L.'s hearsay objections to these two exhibits, and H.L. raised no other objections to the Tracing Spreadsheets. 2RR:58, 72–73; *See generally*, 2RR. H.L. does not challenge the trial court's ruling on these objections in this appeal. *See generally*, A/ant's Br.

**R.** **In response to the tracing,** the only documentary evidence introduced by H.L. relevant to the Tracing Spreadsheets were five checks signed by Cindy's father. 2RR:82–83, 104–05; 3RR:4–8:REx.1.[4] Additionally, although he offered no documentary evidence or legal authority to support his belief, H.L. testified that he did not believe that Cindy had inherited $1.2 million, but rather, that he believed her inheritance to be approximately $890,000 and that he did not believe that her entire inheritance was her separate property. 2RR:162.

**S.** **In June 2013,** a third appraisal of the 3 Properties was completed. 2CR:101–118. **On July 10, 2013,** that appraisal was delivered to H.L. through his attorney. 2CR:120. H.L. raised no objection to this appraisal. *See generally*, 1–2CR, SCR, 1–3RR.

**T.** **On September 23, 2013,** the court signed a Final Decree of Divorce. 2CR:5–32.

---

[4] H.L. questioned the authenticity of one of the checks.

**U.**     **On October 22, 2013,** H.L. filed an unsworn Motion for New Trial.[5] 2CR:133–41.

**V.**     **On November 5, 2013,** the trial court signed Findings of Fact and Conclusions of Law. 2CR:144–47.

**W.**     **On or about December 13, 2013,** H.L.'s notice of appeal was filed challenging the trial court's September 23, 2013 judgment.

**X.**     **On January 10, 2014,** in response to H.L.'s request, the trial court signed Additional Findings of Fact. SCR:44–60, 62–64.

## III.
### SUMMARY OF THE ARGUMENT

In his brief, H.L. challenged (1) the trial court's characterization of the Parties' estate; (2) the trial court's valuation of the Parties' property; (3) the trial court's award of a reimbursement claim to Cindy; (4) the trial court's just and right distribution of the marital estate; and (5) alleged procedural errors committed by the trial court.

H.L. failed to preserve the majority of his issues by failing to raise proper objections or assert his claims at trial. Further, most of H.L.'s claims cannot be considered by this Court because he relies on material outside the formal appellate record. Finally, H.L. failed to present a claim to this Court because his brief does not comply with Tex-

---

[5] The filing date of this Motion for New Trial was originally recorded as October 28, 2013. 2CR:133–41. However, this was corrected by order of the court on March 3, 2014. SCR:65–66.

as Rule of Appellate Procedure 38.1(i), which requires appellate briefs to contain clear and concise argument for contentions made, with appropriate citation to authorities and to the record.

Additionally, the evidence before the trial court, which included the Tracing Spreadsheets and H.L.'s judicial admission regarding Cindy's inheritance, was legally and factually sufficient to support the trial court's reimbursement award to Cindy. Further, even if the trial court erred, such error was de minimus because the reimbursement award was less than the amount to which H.L. conceded Cindy had received through her inheritance.

Finally, the trial court committed no procedural errors that denied H.L. due process of law. However, to the extent that the trial court did commit any of the procedural errors asserted by H.L., he failed to establish how any such errors caused him harm.

Accordingly, this Court should overrule H.L.'s issues and affirm the trial court's Final Decree of Divorce.

## IV.
### ARGUMENT

#### A.    GENERAL OBJECTIONS TO APPELLANT'S BRIEF.

Texas Rule of Appellate Procedure 38.1(i) provides:

(i)    *Argument*. The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.

Tex. R. App. P. 38.1(i). While an individual has the right to represent himself at trial and on appeal, he will not be treated differently than a party who is represented by a licensed attorney. *Bolling v. Famers Branch Independent School Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.). In an appellate brief, an appellant must adhere to the Texas Rules of Appellate Procedure, including Texas Rule of Appellate Procedure 38.1(i). *Id.* An appellate court is not responsible for searching the record for facts that may be favorable to a party's position or identifying possible trial court error. *Id.* An appellate court cannot abandon its role as judge and become an advocate for a party. *Id.* If an appellant fails to present the appellate court with proper briefing, the appeal may be dismissed. *Id.* at 895–96.

To comply with Rule 38.1(i) an appellant must guide the court through his argument and provide direct references to the record. *Id.* at 896. Additionally, existing legal authority applicable to the facts and issues presented must be accurately cited. *Id.* "References to sweeping statements of general law are rarely appropriate." *Id.*

Throughout his brief, H.L. has articulated no specific, direct complaints regarding any of the trial court's Findings of Fact or Conclusions of Law (collectively, "Findings"). *See generally*, A/ant's Br. Instead, H.L. merely references certain Findings throughout his brief without asserting any specific challenge to any one Finding. *See generally*, A/ant's Br. Further, H.L. does not clearly assert which Findings were directly applicable to which of his issues presented and does not indicate whether the refer-

enced Findings support his position or whether he intended to challenge those Findings. *See generally*, A/ant's Br. Additionally, although he sets out several general propositions of law, H.L. fails to guide the appellate court through his argument or cite specifically to portions of the record or how the legal authority that he cites supports his arguments. *See generally*, A/ant's Br. Because H.L.'s brief fails to contain a clear and concise argument for any of the contentions made, with appropriate citations to authorities and to the formal appellate record, he has waived all of his complaints, and this Court should dismiss his appeal. *See* Tex. R. App. P. 38.1(i); *Bolling*, 315 S.W.3d at 895–96.

In the event this Court determines that H.L. has not generally waived all of his complaints, Cindy will attempt to address specific objections to each of his issues and, if possible, address the merits of his arguments.

**B.    RESPONSE TO ISSUE ONE AND ISSUE THREE PART A.**

**The trial court has not mischaracterized the assets of the marital estate.**

In his first issue, H.L. argues that the trial court erred by mischaracterizing the assets of the marital estate on which disputed evidence was presented. A/ant's Br:11. H.L. further argues that the evidence was legally and factually insufficient to establish the separate character of any part of Cindy's estate. A/ant's Br:11. Additionally, in part

A of his third issue, H.L. asserts that Cindy failed to establish her separate property claim by clear and convincing evidence. A/ant's Br:27, 30–36.

**1.      H.L. has waived his complaints regarding characterization of the marital estate.**

In his first issue, H.L. merely references Finding 4 and 9[6] and Additional Finding 2b, which only reference the Parties' community property. A/ant's Br:12–13. He makes no attempt to guide the court through his argument, provide direct references to the record, or explain how the legal authority that he cites generally applies to the facts of this case. A/ant's Br:11–22. Rather, H.L.'s arguments rely on his supplemental appendices, which contain annotated tables and documents outside the formal appellate record, to support his contention that Cindy's asserted value of her separate estate was incorrect. A/ant's Br:11–22; A/ant.'s Supp. Apps.(A–C, E). Because H.L.'s brief fails to contain a clear and concise argument to support his contentions, with appropriate citations to authorities and to the record and because he relies on materials outside the formal appellate record, he has failed to properly present an issue to this Court for appellate review. *See* Tex. R. App. P. 38.1(i); *Bolling*, 315 S.W.3d at 897.

---

[6] H.L. refers to Finding of Fact 9, which lays out the factors the trial court considered in making its just and right division, in each of his first four issues.

In the event this Court determines that H.L. has presented an issue that this Court can review, Cindy will attempt to addresses the merits of H.L.'s arguments.

**2.        The trial court has not mischaracterized the Parties' marital assets.**

H.L.'s real complaint in his first issue appears to be that Cindy failed to establish by clear and convincing evidence that the inheritance she received from her mother totaled $1,227,300.94, which mirrors his tracing complaint in Part A of his third issue.

Disregarding his citations to evidence outside the record, in his first issue, H.L. appears to be arguing, without citing to any legal authority, that because assets were sold during the marriage, the proceeds were presumed to be community property. A/ant's Br:19. However, this argument ignores the fact that separate property retains its separate character through a series of exchanges so long as the separate ownership is traced back to the original acquisition of the separate property. *See Sink v. Sink*, 364 S.W.3d 340, 344–45 (Tex. App.—Dallas 2012, no pet.).

In Part A of his third issue, H.L. relies on *Ganesan v. Vallabhaneni*, 96 S.W.3d 345 (Tex. App.—Austin 2002, no pet.), *Osorno v. Osorno*, 76 S.W.3d 509 (Tex. App.—Houston [14th Dist.] 2002, no pet.), *Robles v. Robles*, 965 S.W.2d 605 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), and *McElwee v. McElwee*, 911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1993, writ denied) to support his contention that Cindy's Tracing Spreadsheets were insufficient to defeat the community presumption. A/ant's Br:31–32. H.L. misplaces his reliance.

In *Ganesan*, the husband testified that he owned certain accounts prior to marriage. 96 S.W.3d at 354. The husband introduced some exhibits to corroborate his testimony; however, the exhibits failed to provide dates of transfers, amounts transferred in and out of accounts, sources of funds, "or any semblance of asset tracing." *Id.*

In *Osorno*, the husband asserted that certain accounts were his separate property. 76 S.W.3d at 512. However, the only evidence supporting that assertion was the husband's testimony. *Id.*

In *Robles*, the husband contended that several tracts of real property and some mineral interests were his separate property. 965 S.W.2d at 614. The husband asserted that certain properties were purchased with inherited or gifted funds and that certain other properties were gifted to him, but he failed to produce any evidence to corroborate his testimony. *Id.* at 616–17. Further, none of the deeds conveying the disputed property included recitals that the conveyances were to the separate property of the grantee. *Id.* at 614–21.

In *McElwee*, the court of appeals noted that "mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the [community property] presumption." 911 S.W.2d at 188. However, the *McElwee* court did not address whether the parties in that case adequately traced separate property. *Id.*

Here, unlike the husbands in *Ganesan*, *Osorno*, and *Robles*, Cindy produced documentary evidence to corroborate her testimony that was far more than a "semblance" of tracing. *See Ganesan*, 96 S.W.3d at 354; *Osorno*, 76 S.W.3d at 512; *Robles*, 965 S.W.2d at 614–21. At trial, Cindy produced a 76-page binder that contained her Tracing Spreadsheets, which traced the marital financial assets and accounted for the dissipation and expenditure of the community estate, H.L.'s separate estate, and her separate property estate, which she had received as inheritance and gifts from her parents.[7] 3RR:86–162:PEx.6; 2RR:58. H.L. does not dispute that a year before trial, Cindy provided him with her Tracing Spreadsheets and all the underlying documents to support her Tracing Spreadsheets. 2RR:72, 166–68. Additionally, at trial, H.L. judicially admitted that Cindy had received close to $890,000 through inheritance.[8] 2RR:162. A judicial admission is a formal waiver of proof. *Mendoza v. Fidelity & Guaranty Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A judicial admis-

---

[7] Although H.L. points to objections asserted at trial to the entry of Cindy's tracing exhibits, which the trial court overruled, he does not challenge the trial court's ruling in this appeal. A/ant's Br:16–18.

[8] In addition to judicially admitting to Cindy's inheritance, H.L. did not challenge at trial or in this appeal that Cindy also received additional significant monetary gifts from her parents. 3RR:120:PEx(6.2); *see generally*, 1–2CR; SCR; 1–3RR. To the extent that H.L. contends that any of the gifts from Cindy's parents were community property, this is an improper argument. It is well-settled that gifts to spouses jointly are not community property, rather each spouse is vested with a one-half interest in the gift as his or her separate estate. *Dutton v. Dutton*, 18 S.W.3d 849, 852 (Tex. App.—Eastland 2000, pet. denied); *Roosth v. Roosth*, 889 S.W.2d 445, 457 (Tex. App.—Houston [14th Dist.] 1994, writ den'd); *McLemore v. McLemore*, 641 S.W.2d 395, 397 (Tex. App.—Tyler 1982, no writ).

sion is conclusive upon the party making it, relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. *Mendoza*, 606 S.W.2d at 694; *Clements v. Corbin*, 891 S.W.2d 276, 280 (Tex. App.—Corpus Christi 1994, writ denied). Finally, H.L. points to no other evidence in the record to show where the expended funds came from other than from Cindy's inheritance and gifts from her parents. *See generally*, 1–2CR, SCR, 1–3RR. Accordingly, the trial court had sufficient evidence upon which to find that Cindy's separate estate had expended at least $813,988.71 on the community estate.

Finally, H.L. concedes that a mischaracterization of property is not automatic grounds for reversal, and a de minimus effect on the just and right division of the community does not require reversal. A/ant's Br:21–22 (citing *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.)); *see also Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied). H.L. did not request and the trial court did not issue any finding with respect to the value of either party's separate estate, and without such a finding there is no way for this Court to determine what values the trial court considered or did not consider. *See generally*, 1–2CR, SCR, 1–3RR; 2CR:125–31; SCR:44–60. However, the trial court found that Cindy was entitled to an equitable reimbursement claim for $813,988.71, which is significantly less than the amount to which H.L. conceded during trial that Cindy had received as her separate property inheritance. 2CR:145; 2RR:162. Thus, any error the tri-

al court may have made in characterizing Cindy's separate estate would have been de minimus and would not require a reversal. *See Monroe*, 358 S.W.3d at 718. Accordingly, this Court should overrule H.L.'s first issue and part A of his third issue.

## C.    RESPONSE TO ISSUE TWO.

**The trial court did not err in valuing the Parties' 3 Properties.**

In his second issue, H.L. argues that the trial court erred in its establishment of the value of certain assets of the marital estate on which disputed evidence was presented. A/ant's Br:23. Without citing relevant legal authority, H.L. argues that the trial court erred in valuing the 3 Properties based on the post-trial appraisal. A/ant's Br:25–27.

### 1.    H.L. waived his complaint regarding the trial court's reliance on the third appraisal to value the 3 Properties.

H.L. has waived this issue because he failed to adequately brief his complaint. *See Bolling*, 315 S.W.3d at 896; Tex. R. App. P. 38.1(i). H.L.'s only citations to legal authority in this section address general statements of law without any explanation as to how that legal authority applies to the specific facts presented in his appeal. A/ant's Br:24–26. Therefore, H.L. has failed to properly present this issue for appellate review. *See* Tex. R. App. P. 38.1(i).

Additionally, H.L. complains for the first time on appeal that the third appraisal was flawed. A/ant's Br:25–26; *see generally*, 1–2CR, SCR, 1–3RR. The third appraisal

was completed in June 2013. 2CR:101–20. On July 10, 2013, the completed appraisal was delivered to H.L. 2CR:120. On August 26, 2013, H.L. filed an Objection to Entry of Final Decree of Divorce, in which he stated, "[t]hree separate appraisals were conducted at the residence and three different values were provided." 1CR:67. In his filed objection, H.L. noted that the third appraisal returned the lowest value, but he raised no argument that the appraisal was flawed or otherwise invalid. 1CR:67–68. On September 23, 2013, the trial court signed a Final Decree of Divorce, to which it attached the third appraisal. 2CR:91–120. Thus, despite his contention to the contrary, H.L. had at least ten weeks to review the appraisal and to raise an objection to it, but he did not do so. *See generally*, 1–2CR, SCR. Therefore, H.L. has waived his complaint regarding the validity of the third appraisal. *See* Tex. R. App. P. 33.1.

In the event this Court determines that H.L. has not waived this issue, Cindy now addresses the merits of H.L.'s issue two.

**2.      The trial court did not err in using the third appraisal to value the 3 Properties.**

Without citing any authority, H.L. alleges that the trial court abused its discretion in relying on the third appraisal. A/ant's Br:25–26. Additionally, H.L. refers generally to Additional Finding of Fact 2(a) without clearly raising an objection to the finding. A/ant's Br:24.

In a bench trial, the trial court may permit the entry of new evidence at any time when it clearly appears to be necessary to the due administration of justice. *Moore v. Jet Stream Invs.*, 315 S.W.3d 195, 201 (Tex. App.—Texarkana 2010, pet. denied); Tex. R. Civ. P. 270. Texas Rule of Civil Procedure 270 provides in pertinent part:

> When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time.

Tex. R. Civ. P. 270. The decision to reopen is within the trial court's sound discretion. *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 2001, no pet.). A trial court's discretion to permit additional evidence should be exercised liberally to allow both parties to fully present their case. *Id.*; *Moore*, 315 S.W.3d at 201. Additionally, Texas Rule of Civil Procedure 270 does not require a motion by a party; rather, a trial court may reopen evidence on its own motion. *Holden v. Holden*, 456 S.W.3d 642, 650 (Tex. App.—Tyler 2015, no pet.); *In re K.E.*, No. 07-13-00082-CV, 2013 WL 4733999, at *2–*3 (Tex. App.—Amarillo 2013, no pet.)(mem. op.).

In response to H.L.'s request, the trial court included in its Additional Findings of Fact the following finding:

> [Additional Finding of Fact]2. …
>
> a.     that the [3 Properties] had a value of $780,000.00.

SCR:62–63. This value matched the appraisal that was attached to the Final Decree of Divorce. 2CR:91–120. H.L. has cited no legal authority to support an assertion that the

trial court abused its discretion in making Additional Finding of Fact 2(a). *See general-ly*, A/ant's Br. Accordingly, this Court should overrule H.L.'s second issue.

**D.      RESPONSE TO ISSUE THREE PARTS B–D.**

**The trial court did not err in awarding Cindy an equitable reimbursement award against the community and a monetary judgment against H.L.**

In his third issue, H.L. argues that the trial court erred by entitling Cindy's separate estate to an equitable reimbursement claim against the community estate and by awarding Cindy's separate estate a monetary judgment against H.L. A/ant's Br:27–28.

**1.      H.L. failed to present a reviewable issue regarding his challenge to the trial court's reimbursement award.**

Without citing to any support for his contention in the formal appellate record, H.L. asserts that Cindy's values in her Tracing Spreadsheets were controverted. A/ant's Br:33–35. Additionally, H.L. merely references Finding 7 through 10, Conclusion of Law 5, and Additional Finding 3, without any attempts to guide the court through his argument, provide direct references to the record, or explain how the legal authority that he cites generally applies to the facts of this case. A/ant's Br:27–40. Rather, H.L. points to the documents in his supplemental appendices to support his contention that Cindy understated the value of the community property. A/ant's Br:35.

Because H.L.'s brief fails to contain a clear and concise argument to support his contentions, with appropriate citations to the record and because he relies on material

outside the formal appellate record, he has failed to properly present an issue to this Court for appellate review. *See* Tex. R. App. P. 38.1(i); *Bolling*, 315 S.W.3d at 897.

In the event this Court determines that H.L. has presented an issue that this Court can review, Cindy will attempt to addresses the merits of H.L.'s arguments.

### 2. The evidence supports the trial court's reimbursement award and monetary judgment.

#### a. The evidence supported a finding that Cindy was entitled to at least $813,988.77 in reimbursable claims.

H.L. argues that Cindy failed to establish that her separate estate's contributions to the community estate were reimbursable. A/ant's Br:27–28. Rather, H.L. cites generally to Texas Family Code Section 3.402(a)(1), (2), and (8) and Section 3.409(2) through (4) to support his assertions that the trial court failed to consider offsets when awarding Cindy a reimbursement claim. A/ant's Br:35, 37–38. Specifically, H.L. points to Cindy's trial exhibit 7 (Cindy's "Reimbursement Claim") and challenges whether the "Payment of American Express Unsecured Liability - $296,236.54" is a reimbursable claim. A/ant's Br:36–37; 3RR:164:PEx.7.

At trial, Cindy attached a spreadsheet to her Reimbursement Claim that accounted for all of the Parties' American Express charges. 2RR:73; 3RR:165–68:PEx.7. Cindy testified that about 10% of the American Express claim was related to general living expenses. 2RR:69. Other than testifying that the account was used "a lot," neither party testified about the purpose of the account or why it was opened. 2RR:42; *see generally*,

2RR. Thus, H.L.'s argument for the first time in his appellate brief that the account was used "primary for day to day living expenses" is not based on any evidence in the formal appellate record and is thus waived. A/ant's Br:36–37; *see generally*, 1–2CR, SCR, 1–3RR; *see* Tex. R. App. P. 33.1.

Further, Cindy's reimbursement claim was for $1,266,315.66. 2RR:71; 3RR:165–68:PEx.7. The trial court awarded her only $813,988.71. 2CR:145. Thus, the trial court appears to have excluded from Cindy's claims any expenses it deemed to be unreimbursable.

### b. H.L. failed to meet his burden to prove he was entitled to any offsets to the reimbursement claim.

H.L. relies in part on his supplemental appendices and in part on values in an exhibit to the Final Decree to support a contention that the trial court failed to offset Cindy's reimbursement claim based on:

- Cindy's use and enjoyment of the 3 Properties;

- H.L.'s time, toil, and effort in improving the 3 Properties;

- the other assets awarded to Cindy in the final decree;

- K1 and other taxes resulting from Cindy's gifts and inheritance; and

- legal fees incurred in the probate of her father's estate.

A/ant's Br:28, 37–38. To the extent that he relies on material outside the formal appellate record, H.L. has failed to present an issue for this Court to review. *See Bolling*, 315 S.W.3d at 895–96; Tex. R. App. P. 38.1(i).

Additionally, H.L. cites generally to Texas Family Code Section 3.402 and 7.007 to support his assertion that the trial court erred in failing to identify and value offsets in Cindy's reimbursement award. A/ant's Br:35, 37–38. However, H.L. misplaces his reliance.

Texas Family Code Section 3.402(e) provides:

(e)     The party seeking an offset to a claim for reimbursement has the burden of proof with respect to the offset.

Tex. Fam. Code § 3.402(e); *see also Barras v. Barras*, 396 S.W.3d 154, 177 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). H.L. did not assert at trial that he was entitled to an offset of Cindy's reimbursement claim. *See generally*, 2RR. Thus, H.L. failed to meet his burden to prove he was entitled to any offset of the reimbursement claim. *See* Tex. Fam. Code § 3.402(e); *Barras*, 396 S.W.3d at 177.

> **c.     Cindy provided sufficient evidence to prove the enhancement value of the 3 Properties.**

H.L. argues that the trial court erred in awarding Cindy a reimbursement claim when she failed to establish the enhancement value of the real property improvements. A/ant's Br:28. H.L. cites generally to Texas Family Code 3.402(d) to support his contention that Cindy failed to correctly calculate the enhancement value of the 3 Proper-

ties. A/ant's Br:39–40. Further, H.L. asserts, without citing any legal authority, that the correct enhancement value should have been calculated by relying exclusively on the Comal County tax records and value histories for the 3 Properties. A/ant's Br:39–40.

Enhancement value is the difference between the fair market value before and after any improvements. *Nelson v. Nelson*, 193 S.W.3d 624, 633 (Tex. App.—Eastland 2006, no pet.). Here, the trial court was presented with uncontroverted evidence of the price the Parties paid for the property before any improvements were made. 3RR:92, 97:PEx.6.1. Additionally, the trial court was presented with evidence of the current value of the property. 2CR:101–20. Therefore, the trial court could have reasonably relied on that evidence in calculating whatever portion of the $813,988.71 reimbursement award was attributable to the enhancement value of the 3 Properties.

### d.    Conclusion.

Contrary to H.L.'s assertion that the trial court failed to take into consideration unreimbursable expenditures or offsets, the trial court awarded Cindy far less than she was seeking, even if the trial court accepted H.L.'s testimony regarding the value of Cindy's separate property inheritance.

Accordingly, this Court should overrule H.L.'s third issue.

## E.    RESPONSE TO ISSUE FOUR.

**The trial court did not err in dividing the marital estate.**

In his fourth issue, in addition to reasserting at length his earlier complaints, H.L. argues, without citing any legal authority, that the trial court erred by granting a divorce on the grounds of insupportability, rather than adultery, and in failing to find that a check signed with Cindy's father's name was forged by Cindy. A/ant's Br:46–47. H.L. further argues that by failing to assign fault and by improperly finding that Cindy was entitled to a reimbursement claim, the trial court erred by ordering a division of the marital estate so manifestly unjust and unfair as to constitute a clear abuse of discretion, so the entire community estate must be remanded for a new just and right division. A/ant's Br:40–52.

### 1.    H.L. failed to present a reviewable issue as to fault.

Again, although he sets out several general propositions of law, H.L. fails to guide the appellate court through his argument or cite specifically to portions of the record or how the legal authority that he cites supports his arguments, thereby waiving his complaints. *See generally*, A/ant's Br:40–52; s*ee* Tex. R. App. P. 38.1(i); *Bolling*, 315 S.W.3d at 895–96.

**2.** **The trial court did not err in granting the divorce on the ground of insupportability.**

H.L. has not alleged that the marriage did not become insupportable; rather, he appears to argue that the trial court should have additionally granted the divorce on the ground of adultery. A/ant's Br:46.

A trial court has the discretion to choose to grant a divorce for insupportability or for various other fault-based reasons. *Baker v. Baker*, _ S.W.3d _, No. 14–14–00083–CV, 2015 WL 3917922, at \*8–\*9 (Tex. App.—Houston [1st Dist.], no pet h.)(citing *Clay v. Clay,* 550 S.W.2d 730, 734 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ)). Further, even if there is uncontested evidence of an affair, a trial court may grant a divorce on the ground of insupportablity, and not adultery, if the evidence supports such a finding. *Lisk v. Lisk*, No. 01-04-00105-CV, 2005 WL 1704768, at \*5 (Tex. App.—Houston [1st Dist.] 2005, no pet.)(mem op.).

Here, Cindy testified, without objection, that the marriage had become insupportable due to discord or conflict that destroyed the legitimate ends of the marriage and that she did not believe there was any chance of reconciliation. 2RR:8. Additionally, over the years, the Parties seemed unable to "find happiness" in their marriage. 2RR:44.

Although Cindy admitted to having an affair after the Parties had separated, H.L. introduced no evidence that this affair served as a basis for the divorce. *See* 1–3RR

*generally*. Reviewing the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); 2RR:98–99.

### 3. The trial court did not err in not finding that Cindy had forged a check from her father.

Without citing any legal authority, H.L. appears to argue that the trial court erred in not finding that a check from Cindy's father had been forged by her. A/ant's Br:47. Although H.L. asserted that Cindy had signed her father's name to the check, Cindy directly denied that allegation while under oath. 2RR:80; 3RR:4–8:REx.1

Further, in his appellate brief, H.L. does not clearly explain how the alleged inauthenticity of this particular check supports his claims. A/ant's Br:47. Thus, H.L. has waived this claim because he has failed to present a clear and concise argument in support of his contentions or cite to any legal authority. *See Bolling*, 315 S.W.3d at 895–96; Tex. R. App. P. 38.1(i).

### 4. The trial court did not err in its just and right division of the marital estate.

As discussed in depth above, the evidence was legally and factually sufficient to support the trial court's division of the marital estate and the reimbursement award.

*Supra.* Further, because H.L. conceded that Cindy's inheritance exceeded the value awarded to her in reimbursement, any error in the calculation of the reimbursement award was de minimus and thus, is not a reversible error. *See Monroe*, 358 S.W.3d at 718; 2RR:71; 3RR:165–68:PEx.7; 2CR:145.

Accordingly, this Court should overrule H.L.'s fourth issue.

**F.    RESPONSE TO ISSUE FIVE.**

**The trial court committed no procedural errors that denied H.L. due process of law.**

In his fifth issue, citing generally to Article 1, Section 19 of the Texas Constitution, H.L. argues that he was denied due process of law. A/ant's Br: 52–60. Specifically, H.L. asserts that:

- The trial court failed to ensure final disposition of his case within six months of the trial;

- The trial court allowed his counsel to withdraw over his objection four days before the trial court signed the final decree;

- The trial court failed to address his First Amended Objection to the final decree;

- The trial court failed to timely file findings of fact and conclusions of law;

- The trial court signed Cindy's proposed findings of fact and conclusions of law;

- The trial court failed to timely forward its findings of fact and conclusions of law to him; and

- The trial court failed to set a hearing on his motion for new trial.

**1. The trial court did not err when it did not enter the final decree within six months.**

H.L. cites Texas Rules of Judicial Administration 6.1(c)(1) to support his contention that the trial court's failure to enter a decree within six months after the trial was reversible error. A/ant's Br:53. H.L. misplaces his reliance.

Administrative Rule 6.1(c)(1) provides:

> District and statutory county court judges of the county in which cases are filed should, *so far as reasonably possible*, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:
>
> * * *
>
> (c)  Family Law Cases.
>
>     (1)  Contested Family Law Cases. Within 6 months from appearance date or within 6 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

Tex. R. Judicial Admin. 6.1(c)(1) reprinted in Tex. Gov't Code, tit. 2, subtit. F, app.(emphasis added). Further, Texas Rule of Judicial Administration 6.1(e) provides:

> It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards.

Tex. R. Judicial Admin. 6.1(e). The Rules of Judicial Administration, promulgated pursuant to Section 74.024 of the Texas Government Code, provide nonbinding time standards. *Jones v. Morales,* 318 S.W.3d 419, 427 (Tex. App.—Amarillo 2010, pet.

denied). Thus, the application of Rule 6 is discretionary and nonbinding, and "does not fix a bright line demarking the outward limit of a trial court's discretion to control its docket." *Id.* Therefore, although courts should aim to enter final decrees of divorce within six months of the appearance date, they are not required to do so. Accordingly, the trial court did not commit reversible error.

Additionally, even if the trial court erred when it did not enter the final decree within six months of the trial, H.L. has failed to show how he was harmed by the trial court's failure to do so. Tex. R. App. P. 44.1(a)(1.). Accordingly, H.L. has waived his complaint.

### 2. H.L. waived his complaint that the trial court erred in allowing his attorney to withdrawal over his objection.

In his next procedural complaint, without citing any authority, H.L. appears to argue that the following actions constituted reversible error:

- the trial court's failure to consider H.L.'s objection to his counsel's motion to withdraw; and

- the trial court's order granting H.L.'s counsel's motion to withdraw;

A/ant's Br:53. Because H.L. has failed to present a clear and concise argument in support of his contentions or cite to any legal authority, he has waived his complaint. *See Bolling*, 315 S.W.3d at 895–96; Tex. R. App. P. 38.1(i).

Additionally, H.L. has failed to show how he was harmed by the order granting his trial attorney's motion to withdraw. Tex. R. App. P. 44.1(a)(1.). Accordingly, H.L. has waived his complaint.

**3.** **H.L. waived his complaint that the trial court erred in entering the final decree over H.L.'s objection.**

Next, again citing no authority, H.L. appears to assert that entry of the final decree over his objection constituted reversible error. *See generally*, A/ant's Br. Because H.L. has failed to cite to any legal authority, he has waived his complaint. *See Bolling*, 315 S.W.3d at 895–96; Tex. R. App. P. 38.1(i). H.L. also waived his complaint because he did not request a hearing on those objections and did not obtain a ruling on his objections. *See generally*, 1CR:76–79; 1–3RR. *See* Tex. R. App. P. 33.1(a)(to preserve complaint, appellant must assert a timely, specific motion and obtain a ruling or refusal to rule).

Finally, H.L. has waived his complaint because even if the trial court erred when it entered the final decree over H.L.'s objections, H.L. has failed to show how he was harmed by the trial court's actions. Tex. R. App. P. 44.1(a)(1.).

**4.** **H.L. was not harmed by the trial court's untimely filing of the findings of fact and conclusions of law.**

Relying on Texas Rule of Civil Procedure 297, H.L. appears to contend that the trial court's late filing of its findings of fact and conclusions of law constitutes reversible error. A/ant's Br:54.

Texas Rule of Civil Procedure 297 provides in pertinent part:

> The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed.

Tex. R. Civ. P. 297. Notwithstanding Rule 297, the trial court can file findings of fact and conclusions of law after the deadline to file them has expired. *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). If the trial court files late findings of fact, the only issue is whether the appellant was harmed. *In re E.A.C.*, 162 S.W.3d 438, 443 (Tex. App.—Dallas 2005, no pet.); *Robles*, 965 S.W.2d at 610. The appellant may be harmed because he (1) was unable to request additional findings or (2) was prevented from properly presenting his appeal. *In re E.A.C.*, 162 S.W.3d at 443; *Robles*, 965 S.W.2d at 610.

Here, upon receiving the trial court's findings of fact and conclusions of law, H.L. requested and obtained additional findings of fact. SCR:44–60, 62–64. Just over three months later, H.L. timely filed his appellate brief in this Court. A/ant's Br. Therefore, even if the trial court's findings of fact and conclusions of law were filed after the deadline, H.L. has not shown he was harmed because he was able to request additional findings and any delay did not prevent him from properly presenting his appeal. *See In re E.A.C.*, 162 S.W.3d at 443; *Robles*, 965 S.W.2d at 610.

Therefore, H.L. failed to show how any procedural errors with respect to the findings of fact and conclusions of law deprived him of due process.

**5. The trial court did not err in signing Cindy's proposed Findings.**

Without citing any authority, H.L. appears to complain that the trial court erred in signing Cindy's proposed findings of fact and conclusions of law. A/ant's Br:54–56. Because H.L. has failed to present a clear and concise argument in support of his contentions or cite to any legal authority, he has waived his complaint. *See Bolling*, 315 S.W.3d at 895–96; Tex. R. App. P. 38.1(i).

H.L. additionally appears to complain that the trial court inadvertently signing and voiding the wrong findings constituted an error. A/ant's Br:54–56. However, he has failed explain how that action harmed him or prevented him from presenting his appeal. *See generally*, A/ant's Br. Accordingly, even if the trial court erred when it inadvertently signed and subsequently voided Cindy's proposed findings of fact and conclusions of law, H.L. has waived his complaint because he has failed to show how he was harmed by the trial court's actions. Tex. R. App. P. 44.1(a)(1.).

**6. H.L. waived his complaint that trial court failed to timely forward its findings of fact and conclusions of law to him.**

H.L. cites Texas Rules of Civil Procedures 297, 299, and 299a to support his complaint that the trial court erred in failing to timely mail him copies of the findings of fact and conclusions of law. A/ant's Br:56–58. Even if the Findings were untimely, H.L. was able to request additional findings and timely file his appeal. SCR:62–64; A/ant's Br.

Again, if an error has occurred, H.L. has failed to establish how the trial court's alleged failure to forward to him a copy of the signed findings of fact and conclusions of law cause him harm. *See* A/ant's Br:56–58. Thus, H.L. has waived his appellate complaint. Tex. R. App. P. 44.1(a)(1.).

**7.     H.L. was not entitled to a hearing on his motion for new trial.**

Finally, citing Texas Rules of Civil Procedure 320 and 239b(a), H.L. appears to argue that the trial court's failure to set a hearing on H.L.'s Motion for New Trial constituted reversible error. A/ant's Br:58. However, H.L. has not established that he was entitled to a hearing on his Motion for New Trial.

An appellant who fails to bring his motion to the trial court's attention or set a motion for hearing is not entitled to a hearing. *Harmon v. Harmon*, 879 S.W.2d 213, 217 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see also, Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank*, 703 S.W.2d 356, 357–58 (Tex. App.—Dallas 1985, no writ)(trial judges cannot be expected to examine *sua sponte* all papers filed in their court).

In *Harmon*, the appellant filed a motion for new trial and embedded a request for a hearing within the motion and mentioned a hearing in his transmittal letter to the District Clerk. 879 S.W.2d at 217. However, the appellant failed to bring his motion to the trial court's attention or set the motion for hearing before it was overruled by operation

of law. *Id.* Thus, the appellant was not entitled to an evidentiary hearing on his motion. *Id.*

Similar to the appellant in *Harmon*, although H.L. embedded a request for a hearing in his Motion for New Trial, he did not seek a setting from the trial court. 2CR:133–144; *see generally*, 1–2CR, SCR. Almost two months after filing his motion, H.L. contacted the District Clerk regarding his "Motion for New Trial and Motion to Set Hearing on October 22, 2013"[9] regarding the incorrect filing date in the Register of Actions, but he did not otherwise mention a hearing. 2CR:174–75. H.L. took no action to bring his motion to the trial court's attention or set the motion for hearing before it was overruled by operation of law. Thus, H.L. has not shown that he was entitled to an evidentiary hearing on his motion for new trial. *See Harmon*, 879 S.W.2d at 217.

## 8. Conclusion

Accordingly, because the trial court committed no procedural errors that denied H.L. due process of law, this Court should overrule H.L.'s fifth issue.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, for all of the foregoing reasons alleged and briefed herein, Appellee prays that this Court affirm in its entirety the trial court's Final Decree of Divorce. Appellee, Cynthia June Maher, further requests that

---

[9] The actual motion was only titled "Motion for New Trial."

this Court grant her such other relief, both general and special, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

GEORGANNA L. SIMPSON, P.C.
1349 Empire Central Drive
Woodview Tower, Ste. 600
Dallas, Texas 75247
Phone: 214-905-3739 • Fax: 214-905-3799

/s/ *Georganna L. Simpson*
**GEORGANNA L. SIMPSON**
Texas Bar Number 18400965
**Attorneys for Appellee,**
Cynthia June Maher

## CERTIFICATE OF COUNSEL REGARDING WORD COUNT

Pursuant to Texas Rule of Appellate Procedure 9, I certify that the word count in this Appellee's Brief, excluding the caption, identity of parties and counsel, statement regarding no oral argument, table of contents, index of authorities, statement of the case, signature, proof of service, certification, and certificate of compliance, **totals 8,476 words**.

/s/ *Georganna L. Simpson*
**Georganna L. Simpson**

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to rule 6.3 of the Texas Rules of Appellate Procedure, a true and correct copy of this Appellee's Brief has been forwarded to:

**Henry L. Maher**                                      **Via E-Service at henrylmaher@gmail.com**
1028 East Ave. N.
Onalaska, WI 54650
**Appellant, pro se**                                   /s/ *Georganna L. Simpson*
                                                        **Georganna L. Simpson**