Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## OPINION

No. 04-10-00561-CV

Dalal Hibri **MONROE**,
Appellant

v.

David Allen **MONROE**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12444
Honorable Peter Sakai, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:    Marialyn Barnard, Justice
Concurring Opinion by: Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  September 7, 2011

AFFIRMED

Appellee Dalal Monroe's motion for rehearing is denied.  This court's opinion and

judgment dated June 15, 2011 are withdrawn, and this opinion and judgment are substituted.  We

substitute this opinion to clarify our opinion and judgment.

Dalal Monroe ("Dalal") appeals from a final decree of divorce.  On appeal, Dalal

contends (1) the evidence is legally and factually insufficient to support certain findings of fact,

and (2) the trial court abused its discretion in the division of the parties' community estate. After this appeal was filed, David Monroe ("David") filed a motion to dismiss the appeal based on the acceptance of benefits doctrine. We affirm.

## BACKGROUND

Dalal and David Monroe were married in 2000. They signed both pre- and post-marital agreements. These agreements converted most, but not all, of David's separate property into community property. The couple separated in 2006 and eventually divorced in 2010. David and Dalal did not have children together. Although David challenged the validity of the pre- and post-marital agreements, the trial court upheld the agreements.

Included in the conversion of David's separate property into community property was his house on Mandalay Street and his interest in any corporation, including PhotoTelesis and PTEL. The post-marital agreement also converted some of Dalal's separate property into community property, but that property is not a subject of this appeal.

Three pieces of property make up the bulk of the community estate: (1) Telesis Holdings, Inc.'s stock, which the trial court valued at $4.4 million; (2) the house on Mandalay Street valued at $3.65 million, with $2.4 million in equity; and (3) the antique telephone collection, which consists of over 4,000 phones valued at $2.7 million.

Telesis Group, Inc. is a holding company that owns E-Watch Corporation of Texas ("E-Watch Texas"), E-Watch, Inc. of Nevada ("E-Watch Nevada"), and Telesis Holdings, Inc. ("Telesis Holdings"). Telesis Holdings owns 17-18% of Symmetrics Technology Group ("Symmetrics") and Symmetrics, through two subsidiaries, owns PhotoTelesis, LP. According to David, PhotoTelesis relies on E-Watch Texas to develop and maintain technology patents,

mainly developed by David, and E-Watch Nevada holds and manages these patents for PhotoTelesis.

David testified that the last time E-Watch Texas made a profit was 2005 or 2006, but the company is integral to operating E-Watch Nevada and maintaining the value of Symmetrics in the PhotoTelesis operation. David also testified E-Watch Nevada was losing money and if he tried to sell it, "it would be almost valueless." On the other hand, Dalal testified David told her E-Watch Nevada was "possibly worth hundreds of millions of dollars," and David told her he was on the verge of selling 20% of E-Watch Texas for $2 million. Dalal then valued Telesis Holdings's stock at $4.4 million by taking the last sales price of the stock, $5.00, and multiplying it by the outstanding shares. The trial court refused to value the Telesis Group due to incomplete evidence of fair market value of the stock, but because Dalal valued Telesis Holdings's stock at $4.4 million, the trial court valued Telesis Holdings at $4.4 million.

As for the house on Mandalay Street in San Antonio, Texas, the trial court found the fair market value to be $3.65 million with approximately $2.4 million in equity. Two mortgage payments must be made every month in the amount of $9,294.63 and $2,352.55.

As for the antique telephones, David testified that before he married Dalal, he owned about 1,000 phones. Over the years, David's collection grew to be one of the largest privately owned collections in the United States. David assessed the value of the phones to be $2.7 million in his Fifth Inventory and Appraisement.

The trial court valued the net community estate at $9,358,398.21. The trial court awarded Dalal: (1) the house on Mandalay, valued to have approximately $2.4 million in equity; (2) a car, valued at $20,000; (3) the "Jaffe furniture" in the house, valued at $175,000; (4) jewelry, valued at $150,000; (5) $18,700 in a trust account from the sale of Symmetrics's stock; and (5) all bank

accounts and frequent flyer miles in her name. The trial court awarded David: (1) the antique telephone collection, valued at $2.7 million; (2) Telesis Holdings, valued at $4.4 million; (3) furniture, valued at $25,000; (4) jewelry, valued at $2,000; and (5) all bank accounts and frequent flyer miles in his name, as well as an insurance policy in his name. The trial court ordered David to provide $250,000 to Dalal in order to pay for her attorney's fees and the mortgage and maintenance for the house for ten months.

## SUFFICIENCY OF THE EVIDENCE

In her first issue, Dalal contends the evidence was legally and factually insufficient to support Findings of Fact 3, 21, 25, 26, 38A, and 39. Those findings are as follows:

> 3. But for the husband's contribution of his separate property to the community estate, the value of the community estate would be minimal.
>
> 21. The Telesis Group, Inc. stock has minimal value if the husband is not personally involved in the continuing operation of the companies owned by this corporation.
>
> 25. The furniture at the residence at Mandalay, including the furniture itemized as the "Jaffe Furniture," as well as antiques, Persian carpets, art, silver, crystal, and other furnishings, are community property, and are awarded to wife free and clear of any claim of David Monroe, and the remainder of the items, are divided in an equitable manner as set out in the Decree of Divorce. The value of the furniture, antiques, Persian carpets, art, silver, crystal, and other furnishings awarded to wife is approximately $175,000 and the value of the furniture to husband is approximately $25,000.
>
> 26. The jewelry of wife has a value of $150,000; it is community property and is awarded to her. In the alternative, even if this jewelry were treated as the wife's separate property, the division of the community estate is fair and just.
>
> 38A. If the husband has received an unequal division of the community estate in his favor, any such unequal division in his favor is justified, taking into account the nature of the property involved in the division, the size and nature of the separate estates,

the attorney's fees to be paid by each party, and the following considerations: A. Virtually all of the community estate was property owned by the husband prior to his marriage to the wife.

39. The decree of divorce orders a division of the estate of the parties in a manner that is just and right, having due regard for the rights of each party.

*Standard of Review/Applicable Law*

A trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). This court has previously stated that "legal and factual insufficiency are not independent grounds of reversible error; instead they constitute factors relevant to our assessment of whether the trial court abused its discretion" when making a just and right division of the community estate. *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.) (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)).

Under Texas law, separate property is the property owned before marriage as well as property acquired during marriage through gift, devise, and descent. TEX. FAM. CODE ANN. § 3.001 (West 2006). All other property that is not separate property is community property. *Id.* § 3.002. The Texas Family Code creates a presumption that property owned by either spouse during marriage is community property. *Id.* § 3.003. The Texas Constitution allows spouses, if agreed in writing, to convert all or part of their separate property into the spouses' community property. TEX. CONST. art. XVI, §15.

When a trial court divides the community estate, it must do so in a manner it deems just and right. TEX. FAM. CODE ANN. § 7.001 (West 2006). To aid in its decision, *Murff v. Murff* sets out that:

the trial court *may* consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property.

615 S.W.2d 696, 699 (Tex. 1981). With these basic principles as guidance, we review the trial court's findings of fact.

*Analysis*

1. *Findings of Fact 3 and 38A*

Dalal complains of the trial court's findings that if not for the conversion of David's separate property into community property, the value of the community estate would be minimal, and that most of the community estate was property owned by David prior to marriage. Dalal contends the trial court erred because the Telesis Group, which she contends is worth more than $4 million, was formed in 2005 during her marriage to David.

In *Horlock v. Horlock*, the Fourteenth Court of Appeals held the trial court could consider "the fact that the husband owned assets with a net worth of over $1,000,000 at the time of the marriage and that the assets were utilized in developing the community estate." 533 S.W.2d 52, 60 (Tex. App.—Houston [14th Dist.] 1975, writ dism'd w.o.j.); *Zorilla v. Wahid*, 83 S.W.3d 247 (Tex. App.—Corpus Christi 2002, no pet.) (taking into consideration whether one spouse "contributed less than an equal share to the family's finances"), *disapproved of on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011).

Telesis Group is community property because of either the pre- and post-marital agreements or because it was formed during marriage. But, in 1995, before David and Dalal married, David sold PhotoTelesis for about $8.2 million dollars. David eventually bought PhotoTelesis back in 1999. Wesley Ellis, the chief financial officer of PhotoTelesis, testified

that Telesis Group was formed as a holding company for PhotoTelesis, E-Watch Nevada, and E-Watch Texas.

There is sufficient evidence to prove Telesis Group was formed from property owned by David prior to marriage. Because this is a factor the court may consider, the trial court did not abuse its discretion in making Finding of Fact 3 and 38A.

2. *Finding of Fact 21*

Dalal contends Telesis Group's stock would retain its value with or without David's personal involvement. Dalal does not cite to any evidence in the record that would support her argument.

As David points out in his brief, Dalal admitted "the companies are worth something because he contributes to that worth." She then asked the trial court to determine the value of the assets without David's contribution. The trial court could not do so because it did not have adequate evidence of the value of the company without David's contributions, and there is sufficient evidence to show that David contributes greatly to the company. David personally runs PhotoTelesis, holds the patents made by the companies, and is an integral part of the company. Therefore, the trial court did not abuse its discretion in finding David is an integral part of the Telesis Group, and without his contributions, Telesis Group's stock would have a minimal value.

3. *Finding of Fact 25*

Dalal contends the trial court over-valued the "Jaffe furniture," which includes antiques and artwork, at $175,000. In 1997, much of the furniture was bought for $182,000, and Dalal claims the purchase price of the furniture fourteen years before trial is not probative of current value.

Dalal did not provide the trial court with an alternative valuation method. When the complaining party does not provide values of the property to the trial court, that party cannot complain on appeal of the trial court's property division. *Vannerson v. Vannerson*, 857 S.W.2d 659, 670 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see also LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi 1988, writ denied).

Because Dalal did not provide the court with a different valuation method than the method the trial court used, she cannot then complain on appeal. Therefore, the trial court did not abuse its discretion in using the purchase price of the furniture to ascertain its value.

*4. Finding of Fact 26*

Dalal contends the court mischaracterized her jewelry as community property instead of separate property. Dalal claims her jewelry was either owned before marriage or gifted to her, by David, during marriage.

As stated above, separate property is that which is owned before marriage or acquired during marriage through gift, devise, or descent. TEX. FAM. CODE ANN. § 3.001. At trial, Dalal testified the jewelry was separate property because it was either owned before marriage or gifted to her during marriage. There was no contradiction to Dalal's testimony about the jewelry. Even though a witness may be interested in the outcome of the proceedings, as long as the testimony is "clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). "The testimony of a spouse seeking to overcome the community property presumption need not be corroborated to meet the clear and convincing standard." *Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied). But, if the spouse's testimony is contradicted, it may not meet the clear and convincing standard. *Id.*

At trial, David did not contradict Dalal's testimony at all and failed to even mention the jewelry in his testimony. Dalal's uncontradicted testimony established, as a matter of law, that the jewelry was separate property.

The trial court found, however, that even if the jewelry was separate property, the division was just and right. We agree. Even though the jewelry was separate property, we remand the entire community estate for a new division only "if it finds reversible error in a specific part of the division that materially affects the trial court's just and right division of the *entire* community estate." *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied) (emphasis added). Reversal is not required if the mischaracterization of property has only a *de minimis* effect on the trial court's just and right division. *Garza*, 217 S.W.3d at 549.

Dalal's jewelry was valued at $150,000 and the entire estate was valued over $9 million. The value of the jewelry was less than two percent of the entire estate. *See Grossnickle*, 935 S.W.2d at 851 (holding that mischaracterization amounting to three percent of community estate does not require remand); *but see Boyd v. Boyd*, S.W.3d 605, 617-18 (Tex. App.—Fort Worth 2004, no pet.) (finding that mischaracterization of almost $300,000 required remand in an estate where husband received $72,000 in community assets and wife received $82,695 in community assets).

Therefore, even though the trial court erred in characterizing the jewelry as community property, it had only a *de minimis* effect on the trial judge's just and right division and does not require remand.

*5. Finding of Fact 39*

Dalal contends this finding, that the property division was just and right, is a conclusion of law, not a finding of fact. Dalal then refers us to her argument and authorities in her second issue.

"[E]ven where the trial court designates some matters findings of fact and others to be conclusions of law, the designation is not controlling on appeal." *In re An Unborn Child*, 153 S.W.3d 559, 561 (Tex. App.—Amarillo 2004, pet. denied); *see Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607, 608, n.1 (Tex. 1979). Because this finding is more proper as a conclusion of law, we treat it as a conclusion of law. *See Cities of Allen v. R.R. Comm'n of Tex.*, 309 S.W.3d 563, 570 (Tex. App.—Austin 2010, pet. filed). We will, therefore, determine whether the trial court made a just and right property division when analyzing Dalal's second issue.

*Conclusion*

We hold the trial court did not abuse its discretion in making Findings of Fact 3, 21, 25, and 38A. Although the trial court mischaracterized Dalal's jewelry as community property, because it had only a *de minimus* effect on the just and right division of the estate, it does not require remand.

**DIVISION OF THE COMMUNITY ESTATE**

In her second issue, Dalal contends the trial court abused its discretion in the division of the parties' community estate.

*Standard of Review/Applicable Law*

When deciding whether the division of the property is just and right, we consider every reasonable presumption in favor of the trial court's proper exercise of discretion in dividing the community estate. *See Murff*, 615 S.W.2d at 698. To aid in our decision, we engage in a two

pronged inquiry: "(1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion?" *Garza v. Garza*, 217 S.W.3d at 549. "We then consider whether, based on the evidence, the trial court made a reasonable decision." *Id.*

"[T]he party complaining of the trial court's division has the burden of demonstrating that it was so unjust as to constitute a clear abuse of discretion." *In re Marriage of Palacios*, No. 07-08-0006-CV, 2009 WL 1653453, at *1 (Tex. App.—Amarillo June 10, 2009, pet. denied) (citing *Frommer v. Frommer*, 981 S.W.2d 881, 814 (Tex. App.—Houston [14th Dist.] 1998, pet. dism'd)). Because it is presumed the trial court properly exercised its discretion in dividing the community estate, it must be shown from the record that the division was so disproportionate it constituted an abuse of discretion. *Grossnickle*, 935 S.W.2d at 836; *see also Murff*, 615 S.W.2d at 698. We consider every reasonable presumption in favor of the trial court's proper exercise of discretion in dividing the community estate. *See Murff*, 615 S.W.2d at 698.

To reiterate, the trial court may consider: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from continuation of the marriage; (3) education; (4) business opportunities; (5) relative physical conditions; (6) relative financial condition and obligations; (7) disparity of ages; (8) size of separate estates; (9) the nature of the property; and (10) disparity in the spouses' income or earning capacity. *Murff*, 615 S.W.2d at 699.

*Analysis*

Dalal contends the trial court awarded 68-71% of the community estate to David and this was an inequitable and unreasonable division based on the *Murff* factors. Dalal argues that because David is an engineer, who owns his own company, he has more business opportunities,

is in better financial condition, and has a higher earning capacity than she. Because of this purported disparity, Dalal argues she should have been awarded a larger portion of the estate.

*Murff* sets out that "the trial court *may* consider such factors" as explained above. 615 S.W.2d at 699 (emphasis added); *see also Hewelt v. Hewelt*, No. 03-04-00221-CV, 2007 WL 3390864, at *4 (Tex. App.—Austin Nov. 14, 2007, no pet.) (mem. op.) ("The factors set out in *Murff* are factors that 'may' be considered, not factors that 'must' be considered."). This list is non-exclusive. *Murff*, 615 S.W.2d at 699; *see also Barnard v. Barnard*, 133 S.W.3d 782, 787 (Tex. App.—Fort Worth 2004, pet. denied). Along with the *Murff* factors, it was proper for the trial court to take into account that even though David may have more business opportunities and earning capacity, the trial court assessed a substantial amount of the financial obligations against David.

A court may take tax liability into consideration in the division of the community estate. *Mullins v. Mullins*, 785 S.W.2d 5, 8-9 (Tex. App.—Fort Worth 1990, no writ). The trial court assessed all of the tax liabilities, over $600,000, against David. David was also burdened with the unknown liabilities stemming from Telesis Holdings and its subsidiaries. Testimony showed some of these companies are losing money or are not very profitable. The trial court also found that both parties came into the marriage with debts; Dalal's debts were paid off while David's debts are still outstanding. David not only paid off the mortgage of Dalal's separate property house, but he also refurbished that house. Dalal admitted at trial she has developed and owns some patents, and she has done some jewelry design. It appears Dalal has some basis for earning capacity and is leaving the marriage relatively debt free whereas David is not.

As for some of the other factors, both David and Dalal have high school equivalent educations; Dalal even has some college hours. Both David and Dalal are in relatively good

physical condition and disparity in age is not an issue. The trial court also found this to be a no fault divorce.

Based on the foregoing, we hold the trial court did not abuse its discretion in making a just and right division. Although it appears David received substantially more of the estate than Dalal, he was also burdened with most of the liabilities, including tax liabilities and liabilities for companies that may be on the brink of collapse. On the other hand, Dalal was assessed only her own liabilities, which equaled $50,000, and her debts were paid off during the course of the marriage while David's were not. David was also required to pay Dalal $250,000 for the mortgage and maintenance of the home on Mandalay Street as well as for attorney's fees.

*Conclusion*

The trial court has broad discretion when making a just and right division and may consider different factors when making that division. For the reasons stated above, we hold the trial court did not abuse its discretion in dividing the community estate.

### ACCEPTANCE OF THE BENEFITS DOCTRINE

After Dalal filed her appeal, David filed a motion to dismiss, arguing Dalal waived her right to appeal the divorce decree because she accepted the benefits under the decree. Due to our disposition of Dalal's issues on appeal, we need not address the merits of David's motion.

### CONCLUSION

We hold the trial court did not abuse its discretion in dividing the community estate. Accordingly, Dalal's issues are overruled.

Marialyn Barnard, Justice